IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| William S. Gay, )<br>     Plaintiff, )<br>)<br>v.            )<br>)<br>J. Walrath, et al., )<br>     Defendants. ) | 1:20cv1089 (RDA/TCB) |

## MEMORANDUM OPINION

William S. Gay, ("Gay" or "plaintiff"), a Virginia inmate proceeding pro se, filed a civil rights action pursuant to 42 U.S.C. § 1983, alleging defendants J. Walrath, T. Meyer, and D. Watford, employees of the Virginia Department of Corrections ("VDOC"), violated his Eighth Amendment rights, and alleges two claims. First, Gay alleges that the defendants were deliberately indifferent to his conditions of confinement because he was housed in a manner that was "imminently dangerous to [his] personal safety" and resulted in him "contracting a life-threatening and physically damaging infectious virus (i.e. COVID-19)." [Dkt. No. 1 at 4]. Second, Gay maintains that the defendants were deliberately indifferent to his serious medical needs because they "failed to treat that obvious condition and their reckless and callous indifference resulted in the [Gay] suffering undue anguish from the COVID-19 virus as well as the associated anxiety, emotional distress, and mental distress." [Id. at 8].

Defendants were served, filed an answer, and have filed a motion for summary judgment. The defendants assert judgment should be entered in their favor because Gay failed to exhaust his administrative remedies before filing his complaint. [Dkt. Nos. 19, 20, 20-1]. Gay has been afforded the opportunity to file responsive materials pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), and he has responded. [Dkt. Nos. 23, 24].

The defendants responded to Gay's brief in opposition with affidavits and documents that they incorporated into their motion for summary judgment. [Dkt. No. 27]. Gay was provided with an opportunity to respond and he filed a motion to compel, which the Court denied without prejudice because the discovery sought was irrelevant to the motion for summary judgment. [Dkt. No. 34]. Gay sought additional discovery in the form of interrogatories related to the motion for summary judgment and the defendants were directed to respond to all but one of the interrogatories by order dated October 27, 2021. [Dkt. No. 42]. Gay moved to strike the discovery response because it was not provided to him on December 16, 2021 [Dkt. No. 44], outside the time frame set forth in the October 27, 2021 Order, and also for a default judgment [Dkt. No. 43]. The defendants opposed the motions and Gay responded on December 30, 2021. [Dkt. No. 46]. On February 9, 2022, the Court denied Gay's motion for a default judgment and to strike the discovery response. [Dkt. No. 48]. Accordingly, this matter is now ripe for disposition. For the reasons that follow, the defendants' motion for summary judgment must be granted.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Defendants, pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56, set forth a statement of material facts that defendants contend are undisputed. Gay disputes only whether he filed a Level II appeal, but he has neither addressed the defendants' statement of undisputed facts on a point by point basis, nor contested the subsequent affidavits the defendants submitted. Gholson v. Murray, 953 F. Supp. 709, 714 (E.D. Va. 1997) (court assumes uncontroverted facts in movant's motion for summary judgment are admitted); see also JDS Uniphase Corp. v. Jennings, 473 F. Supp. 2d 705, 707 (E.D. Va. 2007) (movant's statement of undisputed facts is deemed

2

admitted where nonmovant's response fails to "identify with any specificity which facts, if any, were disputed") (citing E.D. Va. Loc. Civ. R. 56(B)).[1]

## I. Undisputed Statement of Facts

1. Gay is an inmate in the custody of the VDOC and was housed at its State Farm facility during the relevant time frame in 2020. [Dkt. No. 1 at 3].

2. Defendant Walrath is the Warden at State Farm; Defendant T. Meyer is the Warden of Operations at State Farm; and D. Watford is a Unit Manager at State Farm. [Id. at 1-2].

3. The VDOC's Offender Grievance Procedure serves as a mechanism for inmates to potentially resolve problems. [Dkt. No. 20-1 at 2, 6-19].

4. Pursuant to the VDOC grievance procedure, an inmate has thirty calendar days from the date of the alleged incident to file a Regular Grievance ("grievance'). Prior to filing a grievance, the inmate must file an informal complaint to show that he has attempted to informally resolve his complaint. If the inmate is dissatisfied with the response to the informal complaint he may submit a grievance and attach the informal complaint to document he has attempted to resolve the issue informally. [Id. at ¶ 6].

5. A grievance is limited to "*a single grievable issue*," the grieved issue must affect the offender personally, and the grieved issue must "[b]e identical to and limited to the issue submitted on the" informal complaint. See VDOC OP 866.1 (III)(B)(1) (emphasis added). If the grievance is determined to be unfounded, the inmate may appeal that decision within five days. A prisoner is "not required to pay the cost of postage" to appeal an unfounded grievance and VDOC policy encourages "the use of bulk mail." See VDOC OP 866.1 IV(B)(2). If the response is mailed, the

---

[1] The record of admissible evidence includes defendants' affidavits and exhibits. [Dkt. Nos. 20-1; 27-1; 27-2; 46-1, 46-2]. Gay did not verify his complaint, but did attach an affidavit to a response to the motion for summary judgment. [Dkt. No. 23-1]. See Goodman v. Diggs, 986 F.3d 493, 498-99 (4th Cir. 2021) (verified pleadings are the "equivalent of an affidavit"). The "Undisputed Facts" also includes medical documents attached to the complaint.

official responding "must consider mail travel time before determining an appeal is late." Id.

6. Although there are three levels of review, most grievances only require review through Level II. The VDOC's exhaustion requirement is satisfied only when a regular grievance has been appealed through the highest eligible level without satisfactory resolution of the issue. [Id. at ¶ 7].

7. Gay tested negative for COVID-19 on May 26, 2020. [Dkt. No. 1-1 at 1].

8. On June 4, 2020, Gay filed an informal complaint stating that he had been subjected to "2 life threatening situations as an elderly offender." First, he had been moved from a single-cell to a double-cell and "paired with an" inmate that had been exposed to the virus. [Id. at 26] (Informal Complaint, No. PRCC 20 INF 547). Second, his "self-meds" for his blood pressure had been taken from him. L. Allen, Health Service Administrator, responded to the informal complaint on June 10, 2020. [Id. at 21, 26].

9. Gay tested positive for COVID-19 on June 18, 2020. [Id. at 2].

10. On August 17, 2020, Gay filed another informal complaint dated August 17, 2020, which stated that Gay

> was relocated from C-3 to C-4 and subsequent to this move [Gay] became deathly ill and didn't know why. On 8-4-20 [Gay] requested copies of his COVID-19 test results and was shocked that it reflected a positive test result and [Plaintiff] was never notified of these abnormal results or treated for this potentially fatal virus. This is a blatant violation of O.P. 720.1, IV, 9, and a deprivation of my due process and other fundamental constitutional rights.

[Id. at 22] (Informal Complaint, No. PRCC 20 INF 796).[2]

11. A nurse responded to the informal complaint on August 24, 2020 stating that "vitals" of inmates in quarantine were taken twice each day and that if an inmate had abnormal signs or

---

[2] VDOC OP 720.1 covers access to health services by inmates, but the reference in the informal complaint does not correspond to the subparts of the regulation, and does not contain a subpart labeled "IV." There is a portion of the regulation that concerns notification of test results, VDOC OP 720.1 (I)(H), which states an inmate should be notified of test results and informed whether they were "acceptable" or required consultation with a "practitioner to discuss the results." Id.

4

complained of COVID symptoms the inmate was evaluated by a nurse practioner. The response explained to Gay that if he did not notify the medical personnel of his symptoms, he could not be treated and further explained that in the future if he had "symptoms of COVID or any other illness" he should notify the medical unit "for evaluation." [Id.].

12. Gay filed a Regular Grievance dated September 2, 2020, in which he complained that he had not been notified of the test result until after his request on August 4, 2020[3] and that the "conditions of his confinement" resulted in his being exposed to the COVID-19 virus. [Id. at 20] (Regular Grievance, No. PRCC 20 REF 100).[4] In the portion of the grievance asking what action Gay wanted taken in response to his grievance he stated that he wanted "to know why [he] wasn't notified that [he] had tested positive for COVID-19, especially when [he met] all of the at-risk factors identified by the CDC, (over 65, hypertension & diabetes)." [Dkt. 20-1 at 20]. The Level I response was issued on September 11, 2020. [Id. at 21]. In the reason for the appeal portion of the form, Gay states that he appealed to Level I because

> The test at issue was conducted on 6-18-20 yet [Gay] wasn't informed of the positive test results until [he] requested them in August. This violates O.P. 720.1, IV, 9, and allowed me to suffer unduly. [Gay's] Unit was quarantined, yet positive & negative offenders remained on the same floor and were permitted to share the telephone, kiosk, etc.; allowing the spread. The reason [Gay] became infected is because S.F.E.U. violated Section 3(i) of the settlement agreement in Whorley, et al. v. Northam, et al., No. 3:20-cv-00255 (5-11-20) because the constant relocation of offenders, including the at-risk-grievant, resulted in the spread of COVID-19.

[Dkt. No. 24-1 at 1].

13. In reviewing an unfounded grievance, a Level I responder "must not consider any issue

---

[3] The grievance was filed within thirty days of the August 12, 2020 date when Gay learned about the positive COVID-19 test on June 18, 2020 and the negative test on May 26, 2020. [Dkt. Nos. 1-1; 20-1].

[4] In the Complaint section of the grievance Gay stated he had submitted an informal complaint in an effort to ascertain why he had not been notified he had tested positive for COVID-19 and that his conditions of confinement had exposed him to "this virus." [Dkt. No. 20-1 at 20]. Gay stated he filed the grievance because the informal response "failed to explain why" he had not been notified of the test result. [Id.]. The grievance did not complain about either the housing conditions that Gay alleges in Claim 1 resulted in his contracting COVID-19, or a lack of medical treatment.

in the appeal that was not included in the Regular Grievance." VDOC OP 866.1 IV(A)(1). In the Level I response, Defendant Meyer stated

> [i]n your grievance, you state that August 4, 2020 you submitted a request for your COVID 19 results and you w[ere] shocked to realize you had a positive test result. You were never notified that you had tested positive for COVID so you could make a formal complaint that your conditions of confinement resulted in your being exposed.

[Id.].

14. Gay alleges he mailed his Level II appeal on September 15, 2020. The exhibit he attached indicates his appeal had been received on September 23, 2020, more than five days after the time limit for filing an appeal. [Dkt. Nos. 23-1 at 4; 24 at 3-5; 24-1 at 2; 46-1]. The Regional Ombudsman ("Ombudsman") included the same exhibit, which is also date stamped received on September 23, 2020 [Dkt. No. 27-1 at 1-2, 18, 34], and avers that grievances from State Farm are not received by mail, but instead are brought by a runner, daily, from that facility to his facility, the Central Regional Office. Gay's appeal arrived via the runner at the Central Regional Office on September 23, 2020, twelve days after the Level I review determined the grievance was unfounded and the Ombudsman rejected the appeal as untimely. [Id. at ¶ 4].[5]

---

[5] Gay asserted that he "mailed" the grievance to the Ombudsman on September 15, 2020, and the defendants' response included affidavits, which they incorporated into their motion for summary judgment. [Dkt. No. 27 at 2]. Gay's response alleges that the off-site mailroom where his mail is processed has a built-in delay and that he received the Level I denial on Monday, September 14, 2020 and deposited his appeal that day, which would have been picked up the next "workday" "morning," Tuesday, September 15, 2020. [Dkt. No. 24 at 4]. Gay, however, admits in his response that there is no mailroom at the facility where he was housed and his assertions, therefore, are not based upon personal knowledge of what happened to his appeal once it was given to VDOC personnel. [Id.]. The only persons with knowledge of what happens next are VDOC personnel — who have filed affidavits indicating the appeals are brought to the Central Office, daily, by a runner and that Gay's appeal arrived on September 23, 2020. The Ombudsman avers that the appeal was date stamped received on September 23, 2020 (a Wednesday) [Dkt. No. 24-1], which was twelve days after the Level I response. [Dkt. No. 27-1 at 1-2, 18, 34]. On September 25, 2020, Woodson (the Ombudsman) denied the appeal because it was untimely. [Id. at 2]. Woodson also avers that the mail from the State Farm facility where Gay was housed *at that time* was brought from State Farm to the Central Regional Office daily by a "runner" [Id. at 2-3], which Gay has not disputed. To the contrary, Gay's response is consistent with the mail being transported, daily, by a runner. Gay, however, attempts to create a dispute of fact by stating he put a stamp on his appeal, and it therefore went by mail and in support of that assertion he cites a general response by a VDOC employee on August 27, 2021 [Dkt. No. 46-2], to an Offender Request he submitted. As noted, Gay has no personal knowledge of how his appeal was transmitted and the response to his Offender Request is hearsay, Greensboro Professional Firefighters Ass'n v. City of Greensboro, 64 F.3d 962, 967 (4th Cir. 1995) (hearsay "is neither admissible at trial nor supportive

15. Plaintiff did not exhaust his administrative remedies regarding his claims about being exposed to COVID-19 and deliberate indifference to his medical needs after he was exposed.

## II. Standard of Review

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that judgment on the pleadings is appropriate, i.e., that no genuine issues of material fact are present for resolution. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The facts which a moving party bears the burden of proving are those which are material: materiality is dictated by "the substantive law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Once a moving party has met its burden of proof, the non-moving party must produce specific facts to generate a disputed issue for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The court will view the evidence and draw all reasonable inferences in the light most favorable to the non-moving party. Porter v. U.S. Alumoweld Co., 125 F.3d 243, 245 (4th Cir. 1997). Nevertheless, "[o]nly disputes over facts which might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248.

---

of an opposition to a motion for summary judgment"), and not relevant. Gay's August 27, 2021 request did not ask about a grievance appeal he handed over in September 2020 (much less September 14 or 15, 2020, the relevant time), and does not address procedures in September 2020, which is the relevant time averred to by Woodson. Further, the August 27, 2021 response to his request is simply a general statement about what happens to stamped mail and does not address the stated policy of using "bulk mail," and whether the specific regulation authorizing bulk mail for inmate grievance appeals, which are time sensitive. See, supra at 4 ¶ 5. See RadLAX Gateway Hotel, LLC v. Amalgamated Bank, 566 U.S. 639, 648 (2012) (specific limitations control over general rules); see also Credit Union Ins. Corp. v. United States, 86 F.3d 1326, 1333 (4th Cir. 1996) ("It is a basic principle of statutory construction that a specific statute controls over a general provision, particularly when the two are interrelated and closely positioned.") (citing HCSC-Laundry v. United States, 450 U.S. 1, 6 (1981)).

7

The non-moving party may not defeat a properly supported summary judgment motion by simply substituting the "conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990). This applies even where the non-moving party is a pro se prisoner. Campbell-El v. Dist. of Columbia, 874 F. Supp. 403, 406-07 (D.C. 1994); see also Local Civil Rule 7(K)(3) (to defeat a dispositive motion, a pro se party "must identify all facts stated by the moving party with which the pro se party disagrees and must set forth the pro se party's version of the facts by offering affidavits ... or by filing sworn statements. Unsupported speculation is not enough to withstand a motion for summary judgment. See Ash v. United Parcel Serv., Inc., 800 F.2d 409, 411-12 (4th Cir. 1986). Similarly, "[t]he mere existence of some alleged factual dispute" cannot defeat a motion for summary judgment; the dispute must be both "material" and "genuine," meaning that it "might affect the outcome of the suit under the governing law." Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001) (emphasis omitted).

### III. Exhaustion of Administrative Remedies

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under § 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "PLRA's exhaustion requirement is mandatory," Anderson v. XYZ Corr. Health Servs., Inc., 407 F.3d 674, 677 (4th Cir. 2005) (citing Porter v. Nussle, 534 U.S. 516, 524 (2002)), and an "untimely or otherwise procedurally defective administrative grievance" does not satisfy the PLRA's exhaustion requirement. Woodford v. Ngo, 548 U.S. 81, 83-84 (2006). Exhaustion is required even if the administrative remedies do not meet federal standards, are not "plain, speedy, and effective," and even if the relief sought is not

available via the grievance process, such as monetary damages. Porter, 534 U.S. at 524. To properly exhaust, thereby giving the agency a full and fair opportunity to adjudicate a plaintiff's claims, the plaintiff must adhere to the agency's deadlines and procedural rules. Woodford, 548 U.S. at 89–90.

The PLRA also requires that an inmate must exhaust his administrative remedies *before* bringing a suit to challenge prison conditions. Ross v. Blake, 136 S. Ct. 1850, 1854–55 (2016) (quoting 42 U.S.C. § 1997e(a)) (holding that the PLRA "mandates that an inmate exhaust 'such administrative remedies as are available' before bringing suit to challenge prison conditions.") (emphasis added); see Graham v. Gentry, 413 F. App'x 660, 662-663 (4th Cir. 2011) (emphasis added) (the PLRA requires an inmate "to exhaust any "available" administrative remedies *before* pursuing a § 1983 action in federal court).[6] The requirement that a prisoner exhaust before filing in court "allow[s] a prison to address complaints about the program it administers before being subjected to suit, reduc[es] litigation to the extent complaints are satisfactorily resolved, and improv[es] litigation that does occur by leading to the preparation of a useful record." Porter, 534 U.S. at 519.

Woodford held that the PLRA requires "proper exhaustion," meaning that the plaintiff must "us[e] all steps that the agency holds out, and do[] so properly (so that the agency addresses the issues on the merits)." 548 U.S. at 90 (quoting Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002) (emphasis in original)). In so holding, the Supreme Court reasoned that "proper exhaustion"

---

[6] Ross held that courts "may not engraft an unwritten 'special circumstances' exception onto the PLRA's exhaustion requirement" and that "[t]he only limit to §1997e(a)'s mandate is the one baked into its text: An inmate need exhaust only such administrative remedies as are 'available.'" 136 S. Ct. at 1862. Although Plaintiff does not rely on the exceptions in Ross, the Court finds that the three exceptions in Ross do not apply. Id. at 1859-60. First, the grievance process was available to Gay and he used it in grievance No. PRCC 20 REF 100. Second, the grievance procedure is straightforward, and as noted Gay has used it. Lastly, there is no evidence that the VDOC personnel prevented Gay from using the grievance procedure or from filing an appeal. See Gibson v. Weber, 431 F.3d 339, 341 (8th Cir. 2005) ("Appellants have presented no evidence that any prison official thwarted an attempt to initiate the procedures or that any official made it impossible for them to file grievances). See, supra note 5.

9

enhances "the quality of those prisoner suits that are eventually filed," for, "[w]hen a grievance is filed shortly after the event giving rise to the grievance, witnesses can be identified and questioned while memories are still fresh, and evidence can be gathered and preserved." Id. at 95. Thus, "proper exhaustion" requires "compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 90-91. These "critical procedural rules" specifically include grievance timing requirements, for, otherwise, "a prisoner wishing to bypass available administrative remedies could simply file a late grievance without providing any reason for failing to file on time," and, following rejection of the grievance as untimely, "proceed directly to federal court." Id. at 95. The PLRA was not intended to "create such a toothless scheme." Id. The PLRA's exhaustion-prior-to-filing requirement is "mandatory" and the language of the PLRA is "unambiguous." Ross, 136 S. Ct. at 1856. "An inmate 'shall'" not bring any action "absent exhaustion of available administrative remedies." Id. (quoting Woodford, 548 U.S. at 85) (additional citations omitted)).

Exhaustion includes all levels of administrative review. In Booth v. Churner, 532 U.S. 731, 735 (2001), an inmate had failed to properly exhaust his grievance because the inmate had failed to appeal the denial of his grievance to the intermediate or final appeal levels, id. at 735, and the inmate was deemed to have failed to exhaust his administrative remedies. Id.; see Pozo, 286 F.3d at 1025 ("To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require"); see, e.g., Jamison v. Clarke, No. 7:18-cv-00504, 2020 U.S. Dist. LEXIS 177362, *24 (Sept. 28, 2020) (because inmate never appealed his grievance to Level II, "he failed to properly exhaust his remedies, consistent with OP 866.1" and he could not bring the unexhausted claims); Oliver v. Va. Dep't of Corrs., No. 3:09cv56, 2010 U.S. Dist.

10

LEXIS 33931at *17-18 (W.D. Va. Apr. 6, 2010) (holding that Plaintiff who failed to appeal grievance intake decision to VDOC Regional Ombudsman failed to exhaust remedies as required by the PLRA); see also Davis v. Stanford, 382 F. Supp. 2d 814, 818 (E.D. Va. 2004) (Virginia inmates are required to exhaust claims in accordance with the grievance procedures established by the VDOC), aff'd, 127 F. App'x 680 (affirming "for the reasons stated by the district court").

The defendants acknowledge that Gay filed informal complaints regarding the claims he has raised in his complaint, but argue that he did not timely appeal the determination of his grievance (No. PRCC 20 REF 100) past the Level I review. The defendants also argued that Gay had not followed up with filing regular grievances related to his informal complaints and that the text of Grievance No. PRCC-20-REF-100 establishes that the only matter Gay grieved was the lack of notification. [Dkt. No. 20 at 6].

Gay's response to the defendants' argument does not expressly assert that he grieved his present claims, but instead argues that the defendants "concede[d]" that his grievance can be construed to encompass both of his claims. [Dkt. Nos. 24 at 2; 46 at 2]. The defendants, however, never conceded that the substance of either of the claims was properly grieved. [Dkt. No. 24 at 2] (citing Dkt. No. 20 at 6). While the defendants admit that Gay filed informal complaints regarding the claims he has raised in this civil action, they also state he never filed a formal grievance regarding the alleged intentional exposure to COVID-19, or the deliberate indifference to his medical needs. The defendants stated that "regardless of whether one or the other of the *informal complaints* was meant to address conditions of confinement or the lack of medical care, the fact is that he did not appeal any of these *informal complaints* through the highest level of review, i.e. Level II." [Dkt. No. 20 at 6] (citing Dkt. No. 21-1 at ¶ 10) (emphasis added). After Gay characterized the defendants' brief in support as a concession, the defendants submitted an

11

affidavit that expressly states that Gay has not submitted a regular grievance concerning his movement to a double cell in May 2020 or the alleged deliberate indifference to his medical needs by not protecting him from COVID-19. [Dkt. No. 27-2 at 3]. Gay's response does not dispute the affidavit, but continues to rely on his interpretation of the brief in support as a concession. [Dkt. No. 46 at 2]. The record establishes that Gay failed to exhaust his administrative remedies regarding his claims, and the motion for summary judgment will be granted.

## V. Conclusion

For the reasons outlined above, the defendants' motion for summary judgment [Dkt. No. 19] must be granted. An appropriate Order and judgment shall issue.

Entered this 17 day of February 2022.

Alexandria, Virginia

/s/
Rossie D. Alston, Jr.
United States District Judge